WALLACE, Judge.
 

 The State appeals a pretrial order suppressing both out-of-court and in-court identification testimony implicating Allen L. Dorsey (the Defendant) in a home-invasion robbery. We treat the State’s notice of appeal as a petition for writ of certiorari.
 
 See State v. Pettis,
 
 520 So.2d 250 (Fla. 1988);
 
 see also State v. Styles,
 
 962 So.2d 1031 (Fla. 3d DCA 2007) (reviewing by certiorari a pretrial order suppressing a photographic array by which the victim identified the defendant);
 
 State v. Francois,
 
 863 So.2d 1288 (Fla. 4th DCA 2004) (reviewing by certiorari a pretrial order suppressing identification testimony because the procedure used in a photographic lineup was impermissibly suggestive).
 

 We deny the petition as to the out-of-court identification because the trial court did not depart from the essential requirements of law in suppressing the out-of-court identification testimony. However, because the trial court failed to apply the correct legal analysis with respect to the in-court identification, we grant the petition as to the in-court identification only.
 

 I. THE FACTS
 

 A. The Robbery
 

 At about midnight on January 30, 2007, Ryan Young and his brother, John Young, were in the living room of the residence that the two men shared. Ryan was watching television, and John was asleep on the couch. Ryan heard the family dogs
 
 *704
 
 barking at something in the kitchen. He walked into the kitchen to quiet the dogs. As soon as Ryan entered the kitchen, he saw a man who promptly pointed a shotgun at him and marched him back into the living room. The shotgun-toting robber immediately demanded money. The noise caused John to awake.
 

 Ryan told the robber that there was some money on a dresser in one of the bedrooms. The robber directed both men into that bedroom. Ryan collected the money on the dresser and handed it to the robber.
 

 After the robber had the money, he saw a video game console on the floor in the bedroom. The robber ordered Ryan to disconnect the video game console and give it to him. While Ryan was engaged in disconnecting the video game console, the robber forced John to kneel on the floor and face the wall. Then, the robber frisked John to see if he had any money in his pockets.
 

 When Ryan finished disconnecting the video game console, he handed it to the robber. Next, the robber slowly backed out of the bedroom, pointing the shotgun directly at Ryan. As the robber closed the bedroom door, he announced, “If anybody opens up this door, I’m blowing their head off.”
 

 After the robber left the house, John called the authorities. The Pasco County Sheriffs Office investigated the robbery. Ryan described the robber as an African-American male, approximately six feet tall, and weighing 185 to 190 pounds. The robber was wearing three or four shirts. The robber’s outermost shirt was black and his undershirt was white. Ryan explained that the robber’s multiple shirts made it difficult to estimate how much he weighed. Ryan also remembered that the robber was wearing a “black little snow hat.” This hat did not cover or obscure the robber’s face. Notably, Ryan told the investigating officers that the robber had a goatee.
 

 B. The Out-of-Court Identification
 

 On March 7, 2007, approximately five weeks after the robbery, Detective James Medley of the Pasco County Sheriffs Office showed Ryan a photographic array or “photo-pack” consisting of the photographs of the faces of six African-American males. Prior to displaying the photo-pack to Ryan, Detective Medley instructed him not to guess when viewing the photographic lineup. Detective Medley further cautioned Ryan as follows: “The suspect may or may not be in the photo lineup. Look at the physical features of the six persons in the photo lineup.” He also warned Ryan, “You have to be absolutely sure.” According to Detective Medley, Ryan— without hesitation — selected a photograph of the Defendant as depicting the robber. When Detective Medley asked Ryan how he identified the robber, Ryan replied, “The eyes.”
 

 Detective Medley also displayed the photo-pack to John. However, John was unable to identify a suspect from the photo-pack.
 

 C. The Proceedings in the Circuit Court
 

 The State subsequently charged the Defendant with the home-invasion robbery of Ryan and John. The Defendant filed a motion asking the circuit court to suppress both “the photo line up and any testimony by Ryan Young identifying the Defendant as the assailant.” In the motion, the Defendant noted that he was the only person depicted in the photo-pack who had facial hair.
 

 The circuit court conducted an evidentia-ry hearing on the motion to suppress the
 
 *705
 
 identification. The State presented the testimony of Ryan and Detective Medley at the suppression hearing; the Defendant did not call any witnesses. In open court, Ryan identified the Defendant as the robber.
 

 At the hearing, Ryan testified in some detail about his opportunities to observe the robber. He said that the entire incident had lasted from ten to twelve minutes. Because the kitchen was dimly lit, Ryan was not able to see the robber clearly when he first saw him. However, Ryan testified that the living room and the bedroom — where he had spent most of his time with the robber — were brightly lit. Thus, except for the time he spent disconnecting the video game console, Ryan was able to closely observe the robber’s features. During the entire encounter, Ryan was never more than a few feet away from the robber. And Ryan had to face the robber directly when he handed him the money from the dresser and the video game console. Unlike John, Ryan had not been forced to kneel on the floor and face the wall. Consequently, Ryan was able to observe the robber as the robber backed out of the bedroom to leave.
 

 On cross-examination, defense counsel elicited from Ryan the fact that the picture that Ryan had selected from the photo-pack was the only one depicting a man with a goatee. However, when pressed to explain how he had identified the Defendant as the robber, Ryan testified that the goatee was not a factor that influenced his decision to select the Defendant’s photograph. Instead, Ryan repeatedly explained that he “just looked at the eyes.” Asked to explain how the robber’s eyes differed from the eyes of the other five men in the photo-pack, Ryan replied:
 

 It’s the way [the robber] looked down the [gun sight], I don’t know. I don’t know how to explain it, but just whenever he was looking down the [gun sight], pointing the shotgun right at me, I was just able to tell. I don’t know, really, how to explain it. I just know that’s his eyes and everything.
 

 Thus Ryan’s testimony about how he had identified that Defendant’s photograph based upon “his eyes and everything” was consistent with what he had told Detective Medley immediately after selecting the Defendant’s photograph from the photo-pack.
 

 II. THE OUT-OF-COURT IDENTIFICATION
 

 A. The Applicable Law
 

 The determination of whether to exclude an out-of-court identification is determined by a two-pronged test: (1) whether the police used an unnecessarily suggestive procedure and (2), if so, considering all the circumstances, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidenti-fication.
 
 See Manson v. Brathwaite,
 
 432 U.S. 98, 110-14, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977);
 
 Rimmer v. State,
 
 825 So.2d 304, 316 (Fla.2002). The factors to be considered in evaluating the likelihood of misidentification include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness’s degree of attention, (3) the accuracy of the witness’s prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.
 
 Neil v. Biggers,
 
 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
 

 B. Discussion
 

 The trial court found that the photo-pack was impermissibly suggestive because, out of the six African-American males depicted in the photo-pack, the De
 
 *706
 
 fendant was the “only one [having] distinct facial hair about the mouth,” a fact that Ryan had mentioned to police in his description of his attacker. Having found that the photo-pack was impermissibly suggestive, the trial court then analyzed each of the
 
 Biggers
 
 factors. The trial court found that (1) Ryan “had a limited period of time to observe the suspect while under a significant level of threat to himself and his family,” (2) Ryan’s degree of attention to the robber was “questionable,” (3) Ryan’s estimate of the robber’s height and weight differed from the Defendant’s height and weight, (4) the level of certainty of Ryan’s identification “was very low,” (5) Ryan did not view the photo-pack until more than one month after the offense, and (6) Ryan’s brother did not select the Defendant’s photograph from the photo-pack “even though [John] had the same opportunity to view [the] suspect during the robbery.” As a result, the trial court concluded that the photo lineup identification of the Defendant as the robber was not reliable and granted the Defendant’s motion to suppress this identification evidence.
 

 The State makes a persuasive argument that the trial court’s
 
 Biggers
 
 analysis reaches the wrong result. However, “[because certiorari is used to correct only the most serious errors, it is not enough to show that the order to be reviewed is incorrect.”
 
 State v. Smith,
 
 951 So.2d 954, 957 (Fla. 1st DCA 2007). Instead, “[t]o obtain review of a pretrial order in a criminal case by certiorari, the State must show that the order is a departure from the essential requirements of the law.”
 
 Id.
 
 Here, the State has not demonstrated that the circuit court applied the wrong law in reaching its decision excluding evidence concerning the out-of-court identification of the Defendant. Therefore, we are unable to conclude that the circuit court departed from the essential requirements of law in suppressing the out-of-court photo-pack identification.
 
 See State v. Storer,
 
 920 So.2d 754, 758-59 (Fla. 2d DCA 2006);
 
 Smith,
 
 951 So.2d at 957-58.
 

 III. THE IN-COURT IDENTIFICATION
 

 A. The Applicable Law
 

 When the police have obtained a pretrial identification by means of an unnecessarily suggestive procedure, an “in-court identification may not be admitted unless it is found to be reliable and based solely upon the witness’ independent recollection of the offender at the time of the crime, uninfluenced by the intervening illegal confrontation.”
 
 Edwards v. State,
 
 538 So.2d 440, 442 (Fla.1989) (citing
 
 United States v. Wade,
 
 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)).
 

 In gauging the reliability of an in-court identification, the trial judge must consider the following factors: [ (1) ] the prior opportunity the witness had to observe the alleged criminal act; [ (2) ] the existence of any discrepancy between any pretrial lineup description and the defendant’s actual description; [ (3) ] any identification prior to the lineup of another person; [ (4) ] any identification by picture of the defendant prior to the lineup; [ (5) ] failure to identify the defendant on a prior occasion; [ (6) ] any time lapse between the alleged act and the lineup identification; and [ (7) ] any other factors raised by the totality of the circumstances that bear upon the likelihood that the witness’ in-court identification is not tainted by the illegal lineup.
 

 Id.
 
 at 443 (citing
 
 Wade,
 
 388 U.S. at 241, 87 S.Ct. 1926). The State has the burden to show that the in-court identification has an independent source.
 
 Id.
 
 at 444 (citing
 
 Wade,
 
 388 U.S. at 242, 87 S.Ct. 1926).
 

 
 *707
 

 B. Discussion
 

 In its order, the trial court noted only that the impermissibly suggestive lineup tainted any further in-court identification. However, the circuit court did not conduct a separate analysis of the factors to be considered in gauging the reliability of an in-court identification when the police have obtained a pretrial identification by means of an unnecessarily suggestive procedure. This constituted a departure from the essential requirements of law.
 

 IV. CONCLUSION
 

 Based on the above, we deny the State’s petition for writ of certiorari with respect to the out-of-court identification, but we grant the State’s petition with respect to the in-court identification. We quash the trial court’s order solely with respect to the suppression of the in-court identification and remand for further proceedings.
 

 The petition for writ of certiorari is denied in part and granted in part, and the case is remanded for further proceedings.
 

 NORTHCUTT, C.J., and STRINGER, J., concur.